UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ALEXIS BRYAN, MILISSA DUCASSE, and TALLY ROKOCZ, on behalf of themselves and all others similarly situated, | CLASS ACTION COMPLAINT |
| *Plaintiffs,* | DEMAND FOR JURY TRIAL |
| v. | |
| GERBER PRODUCTS COMPANY, | |
| *Defendant.* | |

Plaintiffs Alexis Bryan, Millisa Ducasse, and Tally Rokocz ("Plaintiffs") on behalf of themselves and the Class and Subclasses of all others similarly situated defined below, bring this complaint against defendant Gerber Products Company ("Defendant" or "Gerber") for its negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the heavy metals or other ingredients that do not conform to the labels, packaging, or advertising of, or statements concerning, Defendant Gerber's products sold throughout the United States, including in this District. Plaintiffs seek both injunctive relief and damages on behalf of the proposed Class and Subclasses (as defined below) including: (i) advertising, and statements of, allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief. Given the concealed nature of Defendant Gerber's conduct, Plaintiffs believe that an opportunity to conduct discovery will reveal further support for Plaintiffs' allegations.

## **INTRODUCTION**

1. Plaintiffs bring this action on behalf of themselves and a proposed class of individuals that bought baby food sold by Gerber that was, unbeknownst to Plaintiffs and members of the Class and Subclasses (but known to Gerber), tainted with numerous toxic heavy metals.

Plaintiffs and members of the Class and Subclasses seek injunctive and monetary relief based on Gerber's false, deceptive, and misleading business practices in violation of the consumer protection statutes of the home states of Plaintiffs and members of the Class and Subclasses.

2. Parents and other caregivers, including Plaintiffs and members of the Class and Subclasses, reasonably believe that the baby food they purchase for their babies will be healthy, nutritious, and non-toxic. Alarmingly, they were wrong. On February 4, 2021, the United States House of Representatives Committee on Oversight and Reform's Subcommittee on Economic and Consumer Policy (the "House Subcommittee") released a report entitled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury"[1] (the "Report"). According to the Report, several brands of baby food sold in the United States, including those sold by Defendant Gerber, contain unsafe levels of toxic heavy metals including metals such as arsenic, lead, and cadmium.

3. Given the health risks associated with high levels of toxic heavy metals, the presence of these substances in baby food is a material fact to consumers. Indeed, consumers, such as Plaintiffs and members of the Class and Subclasses (defined below), are unwilling to purchase baby food that contains unsafe levels of toxic heavy metals.

4. Baby food manufacturers hold a special position of public trust; consumers believe that they would not sell products that are unsafe. Defendant Gerber knew that the presence of toxic heavy metals in their baby food was a material fact to consumers, yet omitted and concealed the unsafe level of heavy metals from consumers. To this day, Defendant Gerber's baby foods containing dangerous levels of toxic heavy metals bear no label or warning to parents.

---

[1] *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report (the "Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, Feb. 4, 2021, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (accessed February 24, 2021).

5.      Accordingly, Plaintiffs bring this suit on behalf of themselves and a Class of similarly situated individuals for damages resulting from Defendant's sale of baby food that contained unsafe levels of toxic heavy metals.

## PARTIES

6.      Plaintiff Alexis Bryan is a citizen of the Commonwealth of Pennsylvania.

7.      Plaintiff Milissa Ducasse is a citizen of the State of California.

8.      Plaintiff Tally Rokocz is a citizen of the State of Minnesota.

9.      Defendant Gerber Products Company is a Michigan corporation with its principal place of business currently located at 1812 N Moore Street, Arlington, Virginia, 22209.  Defendant previously maintained its principal place of business in Florham Park, New Jersey.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and the Plaintiffs and most members of the proposed Classes are citizens of a state different from Defendant.

11.      The Court has personal jurisdiction over the Defendant.  The Defendant has transacted business and maintained substantial contact throughout the United States, including in this District.  Defendant's conduct has taken place in, been directed at, and has had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

12.      Venue is proper in this District because a substantial portion of the events complained of herein took place in this District, and this Court has jurisdiction over the Defendant. Specifically, Defendant's decision-making regarding the marketing of the baby foods at issue,

including the decision to omit the material information regarding the toxic heavy metals in the products, was located in this District. Furthermore, Defendant is headquartered in this District.

## FACTUAL BACKGROUND

### I.    GERBER PRODUCTS COMPANY

13.    Defendant Gerber manufactures, markets, advertises, labels, represents, warrants, distributes, and sells baby food products throughout the United States and describes itself as "[o]ne of the world's most trusted names in baby food."[2]

14.    Gerber claims on its website that it has "among the strictest standards in the world. From farm to highchair, we go through over 100 quality checks for every jar."[3] It claims that "our farmers are using best in class practices to ensure quality ingredients and minimize the presence of any unwanted heavy metals."[4] It promises that "Gerber takes many steps to keep levels as low as possible"[5] and "[i]f foods don't pass our quality and safety checks, we don't sell them."[6] It emphasizes, "the truth is you would do anything for your baby, and so would we."[7]

15.    Gerber redoubles these promises by telling parents concerned about recent reports about tainted Gerber baby food, "Gerber baby foods are absolutely safe and healthy for your baby."[8]

---

[2] *Gerber*, https://www.nestle.com/brands/allbrands/gerber (accessed February 24, 2021).

[3] *The Gerber Standard is a Higher Standard*, https://www.gerber.com/commitment-to-quality (accessed February 24, 2021).

[4] *Quality & Safety FAQs*, https://www.gerber.com/learning-center/quality-safety-faqs (accessed February 24, 2021).

[5] *Id*.

[6] *Id*.

[7] *Id.*

[8] *Id.*

16.     Gerber's packaging labels do not list, let alone warn, potential customers that the Gerber Baby Food Products contain toxic heavy metals.

17.     Gerber produces several types of baby foods, including, but limited to the following (the "Gerber Baby Foods"):

- Gerber Banana Sitter 2nd Foods;
- Gerber Sweet Potato Sitter 2nd Foods;
- Gerber Apple Strawberry Banana Sitter 2nd Foods;
- Gerber Apple Sitter 2nd Foods;
- Gerber Banana Blackberry Blueberry Sitter 2nd Foods;
- Gerber Pear Sitter 2nd Foods;
- Gerber Apple Banana with Oatmeal Sitter 2nd Foods;
- Gerber Banana Apple Pear Sitter 2nd Foods;
- Gerber Butternut Squash Sitter 2nd Foods;
- Gerber Banana Orange Medley Sitter 2nd Foods;
- Gerber Apple Blueberry Pouch Sitter 2nd Foods;
- Gerber Green Bean Sitter 2nd Foods;
- Gerber Banana Pear Zucchini Pouch Toddler 12+ Months;
- Gerber Carrot Sitter 2nd Foods;
- Gerber Apple Blueberry Sitter 2nd Foods;
- Gerber Organic Banana Mango Pouch Sitter 2nd Foods;
- Gerber Fruit & Yogurt Strawberry Banana Pouch Toddler 12+ Months;
- Gerber Peach Sitter 2nd Foods;
- Gerber Banana Blueberry Pouch Toddler 12+ Months;
- Gerber Sweet Potato Turkey with Whole Grains Dinner Sitter 2nd Foods;
- Gerber Banana Supported Sitter 1st Foods;
- Gerber Organic Pear Peach Strawberry Pouch Sitter 2nd Foods;
- Gerber Pear Cinnamon with Oatmeal Sitter 2nd Foods;
- Gerber Organic Apple Blueberry Spinach Sitter 2nd Foods;
- Gerber Pea Sitter 2nd Foods;
- Gerber Apple Mango Strawberry Pouch Toddler 12+ Months;
- Gerber Pear Pineapple Sitter 2nd Foods;
- Gerber Carrot Sweet Potato Pea Sitter 2nd Foods;
- Gerber Fruit & Yogurt Very Berry Pouch Toddler 12+ Months;
- Gerber Apple Pear Peach Pouch Toddler 12+ Months;
- Gerber Sweet Potato Corn Sitter 2nd Foods;
- Gerber Apple Supported Sitter 1st Foods;
- Gerber Banana Carrot Mango Sitter 2nd Foods;
- Gerber Organic Pear Peach Strawberry, Carrot Apple Mango & Apple Blueberry Spinach Baby Food Pouch Variety Pack Sitter 2nd Foods;
- Gerber Mango Sitter 2nd Foods;

- Gerber Organic Purple Carrot Banana Acai with Cardamom Pouch Sitter 2nd Foods;
- Gerber Apricot Mixed Fruit Sitter 2nd Foods;
- Gerber Chicken and Gravy Sitter 2nd Foods;
- Gerber Organic Squash Pear Peach with Basil Pouch Sitter 2nd Foods;
- Gerber Organic Squash Apple Sweet Potato Pouch Sitter 2nd Foods;
- Gerber Sweet Potato Supported Sitter 1st Foods;
- Gerber Turkey and Gravy Sitter 2nd Foods;
- Gerber Beef with Gravy Sitter 2nd Foods;
- Gerber Fruit & Yogurt Peaches & Cream Toddler 12+ Months;
- Gerber Prune Apple Sitter 2nd Foods;
- Gerber Organic Apple Zucchini Spinach Strawberry Pouch Sitter 2nd Foods;
- Gerber Ham with Gravy Sitter 2nd Foods;
- Gerber Prune Supported Sitter 1st Foods;
- Gerber Apple Banana with Mixed Cereal Sitter 2nd Foods;
- Gerber Banana Supported Sitter 1st Foods;
- Gerber Banana Plum Grape Sitter 2nd Foods;
- Gerber Very Berry, Peaches & Cream & Strawberry Banana Fruit & Yogurt Pouches Toddler 12+ Months;
- Gerber Carrot Supported Sitter 1st Foods;
- Gerber Organic Carrot Apple Mango Pouch Sitter 2nd Foods;
- Gerber Pear Zucchini Corn Sitter 2nd Foods;
- Gerber Apple Cherry Sitter 2nd Foods;
- Gerber Apple Sweet Potato with Cinnamon Toddler 12+ Months;
- Gerber Banana Blueberry Sitter 2nd Foods;
- Gerber Apple Strawberry Banana Sitter 2nd Foods;
- Gerber Organic Banana Raspberry & Yogurt with Vanilla Pouch Toddler 12+ Months;
- Gerber Pear Supported Sitter 1st Foods;
- Gerber Apple Supported Sitter 1st Foods;
- Gerber Apple Strawberry Banana Pouch Sitter 2nd Foods;
- Gerber Carrot Supported Sitter 1st Foods;
- Gerber Apple Avocado Sitter 2nd Foods;
- Gerber Apple Zucchini Peach Sitter 2nd Foods;
- Gerber Organic Pear Spinach, Pear Mango Avocado & Apple Zucchini Spinach Strawberry Variety Pack Pouches Sitter 2nd Foods;
- Gerber Apple Spinach & Kale Sitter 2nd Foods;
- Gerber Butternut Squash Supported Sitter 1st Foods;
- Gerber Organic Mango Apple Carrot Kale, Apple Peach & Banana Mango Baby Food Variety Pack Pouches Sitter 2nd Foods;
- Gerber Apple Carrot Squash Sitter 2nd Foods;
- Gerber Apple Prune Sitter 2nd Foods;
- Gerber Peach Supported Sitter 1st Foods;

- Gerber Apple Peach Squash Sitter 2nd Foods;
- Gerber Organic Mango Peach Carrot Sweet Potato Oatmeal Pouch Toddler 12+ Months;
- Gerber Pear Carrot Pea Sitter 2nd Food;
- Gerber Banana Strawberry Beet Oatmeal Pouch Toddler 12+ Months;
- Gerber Green Bean Supported Sitter 1st Foods;
- Gerber Pear Supported Sitter 1st Foods;
- Gerber Organic Banana Mango Avocado Quinoa Vanilla Pouch Toddler 12+ Months;
- Gerber Sweet Potato Apple Pumpkin Sitter 2nd Foods;
- Gerber Sweet Potato Banana Orange Sitter 2nd Foods
- Gerber Organic Apple Mango Raspberry Avocado Oatmeal Pouch Toddler 12+ Months;
- Gerber Pear Guava Sitter 2nd Foods;
- Gerber Sweet Potato Mango Kale Sitter 2nd Foods;
- Gerber Pear Mango Avocado Pouch Sitter 2nd Foods;
- Gerber Pumpkin Sitter 2nd Foods;
- Gerber Squash Pear Pineapple Sitter 2nd Foods;
- Gerber Apple Strawberry Rhubarb Sitter 2nd Foods;
- Gerber Organic Pear Peach Oatmeal Toddler 12+ Months;
- Gerber Pear Zucchini Sitter 2nd Foods;
- Gerber Organic Banana Acai Berry Mixed Grain Pouch Toddler 12+ Months;
- Gerber Pea Supported Sitter 1st Foods;
- Gerber Puree Favorites Variety Pack Chicken and Gravy & Turkey and Gravy Sitter 2nd Foods;
- Gerber Banana Pouch Sitter 2nd Foods;
- Gerber Pasta Marinara Advanced;
- Gerber Pear Parsnip Blueberry Sitter 2nd Foods
- Gerber Organic Apple Purple Carrot Blueberry with Yogurt Pouch Toddler 12+ Months;
- Gerber Carrot Mango Pineapple Sitter 2nd Foods;
- Gerber Pasta Primavera Advanced;
- Gerber Strong Banana Blueberry Purple Carrot Greek Yogurt Mixed Grains Pouch Toddler 12+ Months;
- Gerber Garden Veggies & Rice Advanced;
- Gerber Squash Apple Corn Sitter 2nd Foods;
- Gerber Banana Blueberry Rice Pudding Advanced;
- Gerber Strong Pear Sweet Potato Greek Yogurt Oats Cinnamon Pouch Toddler 12+ Months;
- Gerber Pumpkin Banana Sitter 2nd Foods;
- Gerber Strong Broccoli Carrot Banana Pineapple Pouch Toddler 12+ Months;
- Gerber My 1st Veggies Starter Kit Supported Sitter 1st Foods;

- Gerber Organic Sweet Potato Apple Carrot& Cinnamon Sitter 2nd Foods;
- Gerber Organic Banana Supported Sitter 1st Foods;
- Gerber Mango Apple Twist Sitter 2nd Foods;
- Gerber Sweet Potato Mango Pear Kale Pouch Toddler 12+ Months;
- Gerber Organic Apple Kale Fig Sitter 2nd Foods;
- Gerber Organic Carrot Supported Sitter 1st Foods;
- Gerber My 1st Fruits Starter Kit Supported Sitter 1st Foods;
- Gerber Organic Apple Supported Sitter 1st Foods;
- Gerber Organic Apple Mango Brown Rice with Vanilla Pouch Toddler 12+ Months;
- Gerber Fruit & Veggie Favorites Baby Food Variety Pack Tubs Sitter 2nd Foods;
- Gerber Apple Chicken Dinner Sitter 2nd Foods;
- Gerber Organic Apple Peach Pouch Sitter 2nd Foods;
- Gerber Organic Apple Spinach with Kale Sitter 2nd Foods;
- Gerber Apple Mango with Rice Cereal Sitter 2nd Foods;
- Gerber Organic Apple Raspberry Acai Berry Pouch Sitter 2nd Foods;
- Gerber Apple Strawberry Blueberry Mixed Cereal Sitter 2nd Foods;
- Gerber Organic Banana Blueberry Blackberry Oatmeal Pouch Sitter 2nd Foods;
- Gerber Chicken Noodle Dinner Sitter 2nd Foods;
- Gerber Organic Mango Apple Banana Sitter 2nd Foods;
- Gerber Organic Banana Apple Strawberry with Millet Quinoa & Cinnamon Sitter 2nd Foods;
- Gerber Organic Banana Mango Sitter 2nd Foods;
- Gerber Chicken Rice Dinner Sitter 2nd Foods;
- Gerber Organic Banana Squash Pouch Sitter 2nd Foods;
- Gerber Hawaiian Delight Sitter 2nd Foods;
- Gerber Organic Pear Purple Carrot Raspberry Sitter 2nd Foods;
- Gerber Organic Apple Wild Blueberry Sitter 2nd Foods;
- Gerber Organic Banana Strawberry Raspberry Mixed Grain Toddler 12+ Months;
- Gerber Mac & Cheese with Vegetables Dinner Sitter 2nd Foods;
- Gerber Organic Apple Strawberry Beet Sitter 2nd Foods;
- Gerber Organic Mango Apple Carrot Kale Pouch Sitter 2nd Foods;
- Gerber Pea Carrot Spinach Sitter 2nd Foods;
- Gerber Organic Pear Blueberry Apple Avocado Pouch Sitter 2nd Foods;
- Gerber Turkey Rice Dinner Sitter 2nd Foods;
- Gerber Organic Carrot Banana Mango with Millet & Quinoa Sitter 2nd Foods;
- Gerber Organic Pear Spinach Pouch Sitter 2nd Foods;
- Gerber Vanilla Custard Pudding with Banana Sitter 2nd Foods;
- Gerber Organic Carrot Apple Pear Sitter 2nd Foods;
- Gerber Organic Pear Zucchini Mango Sitter 2nd Foods;

- Gerber Vegetable Beef Dinner Sitter 2nd Foods;
- Gerber Organic Pear Supported Sitter 1st Foods;
- Gerber Organic Pumpkin Banana Carrot Pouch Sitter 2nd Foods;
- Gerber Vegetable Chicken Sitter 2nd Foods;
- Gerber Lil' Mixers Vegetable Chicken + Mixed Grain & Carrot Beginner;
- Gerber Lil' Mixers Sweet Potato Turkey + Mixed Grain & Carrot Beginner;
- Gerber Lil' Mixers Apple Avocado + Quinoa Crisp Intermediate;
- Gerber Lil' Mixers Carrot Sweet Potato Pea + Quinoa Crisp Intermediate; and
- Gerber Crawler Fruit & Veggie Melts Truly Tropical Blend Freeze-Dried Snack

18.     Gerber used words such as "organic," "support," "sitter," and "crawler" to emphasize the foods' suitability for consumption by young children and infants.

## II.     HEAVY METAL NEUROTOXINS & THEIR EFFECT ON CHILD DEVELOPMENT

19.     Baby food producers promote their product testing and safety procedures because parents and caretakers pay attention to what ingredients are in the baby food they purchase for their children. This is because adults do not want to expose their children to substances and/or chemicals that would either harm the child or inhibit the child's development.

20.     One example of harmful substances parents want to avoid exposing their children to are the heavy metals arsenic, lead, mercury, and cadmium. These heavy metals are a type of substance known as neurotoxins, or substances that "alter[] the structure of function of the nervous system."[9] Exposure to these neurotoxins have been shown to "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[10]

---

[9] *Neurotoxin*, https://www.britannica.com/science/neurotoxin (accessed February 24, 2021).

[10] Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (accessed Feb. 22, 2021) (hereinafter "Healthy Babies Bright Futures Report"). Healthy Babies Bright Futures Report, at 13.

21.     Research continuously shows that exposure to food containing these heavy metals causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[11] Specifically, the heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[12] These developmental conditions can be caused by exposure to even trace amounts of these substances.[13]

22.     For these reasons, organizations such as the Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[14] Further, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[15]

A.     Arsenic

23.     The heavy metal arsenic has been shown to cause "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[16] The effects of arsenic exposure are irreversible and in addition

---

[11] Healthy Babies Bright Futures Report, at 1.

[12] Healthy Babies Bright Futures Report, at 6.

[13] Healthy Babies Bright Futures Report, at 1.

[14] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury, Staff Report* (the "Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, February 4, 2021, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (accessed Feb. 4, 2021).

[15] Report, at 3.

[16] Healthy Babies Bright Futures Report, at 13.

to the cognitive and neurological effects it has on child development, arsenic also creates a risk of "respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]"[17]

24.    Arsenic's harmful effects have caused both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") to set standards limiting the allowable amount of arsenic in products meant for human consumption. For example, the FDA has set a limit of 10 parts per billion ("PPB") for apple juice, and the EPA has set the same limit for drinking water. Additionally, the FDA has set a limit of 10 parts per billion for bottled water[18] and is considering limiting the action level for arsenic in rice cereals for infants to 100 ppb.[19] The FDA has taken action against companies whose products contain arsenic levels exceeding this limit.[20]

### B.    Lead

25.    Exposure to the heavy metal lead has been shown to cause harm to children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal

---

[17] Report, at 10 (quoting Miguel Rodríguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioural Disorders in Children: A Systematic Review and Meta-Analysis* (June 1, 2013), https://pubmed.ncbi.nlm.nih.gov/23570911/).

[18] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (accessed Feb. 22, 2021).

[19] FDA, *Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level* (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf (accessed Feb. 22, 2021).

[20] *See, e.g. Warning Letter from FDA to Valley Processing, Inc.* (June 2, 2016), https://www.fda.gov/news-events/press-announcements/federal-judge-enters-consent-decree-against-washington-state-juice-processor (accessed Feb. 24, 2021).

growth."[21] Even very low exposure levels to lead "cause lower academic achievement, attention deficits and behavior problems. No safe level of exposure has been identified."[22]

26.    For example, one study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food."[23] Additionally, studies have established a link between lead exposure and Attention-Deficit/Hyperactivity Disorder (ADHD).[24]

27.    The proven negative effects of lead exposure have caused several health organizations—including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports—to recommend that lead in baby foods not exceed 1 ppb[25] and "[t]he European Union has set the maximum lead level in infant formula to 20 ppb."[26]

### C.    Mercury

28.    The World Health Organization warns that mercury "may have toxic effects on the nervous, digestive and immune systems, and on lungs, kidneys, skin and eyes" and considered mercury "one of the top ten chemicals or groups of chemicals of major public health concern."[27]

29.    It has been recognized that "[y]oung and unborn children are at greatest risk from mercury exposure because their nervous systems are still developing"[28] and that exposure to even

---

[21] Report, at 11.

[22] Healthy Babies Bright Futures Report, at 13.

[23] Healthy Babies Bright Futures Report, at 13.

[24] Report, at 12 (citing Gabriele Donzelli *et al.*, *The Association Between Lead and Attention-Deficit/Hyperactivity Disorder: A Systematic Review* (Jan. 29, 2019), http://www.mdpi.com/1660-4601/16/3/382/htm).

[25] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Feb. 22, 2021).

[26] *Id.*

[27] *Id.*

[28] Missouri    Dept.    of    Nat.    Resources,    *Mercury    Can    Affect    Human    Health*,

a small amount of the heavy metal mercury can cause "serious health problems, and is a threat to the development of the child [] early in life."[29]  For example, exposure to even low doses of mercury "may delay a child's walking and talking, shorten attention span and cause learning disabilities."[30]

30.     Exposure to mercury has also been linked to higher risk of lower IQ scores and intellectual disability in children[31] and mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children.[32]

31.     The EPA has set a maximum mercury level in drinking water to 2 ppb.[33]

**D.     Cadmium**

32.     The heavy metal cadmium is considered a neurotoxin. Eating food or drinking water with very high cadmium levels severely irritates the stomach, leading to vomiting and diarrhea, and sometimes death. Eating lower levels of cadmium over a long period can lead to kidney damage, and can cause bones to become fragile and break easily. Exposure to cadmium in air has caused lung cancer, and perhaps prostate cancer, in workers. The US Department of Health

---

https://dnr.mo.gov/env/mercury/mercury-impact.htm#:~:text=Mercury%20Can%20Affect%20Human%20Health,and%20developmental%20disorders%20in%20humans.&text=In%20low%20doses%2C%20mercury%20may,with%20fertility%20and%20blood%20pressure (accessed Feb. 22, 2021).

[29]     *Mercury and health*, https://www.who.int/news-room/fact-sheets/detail/mercury-and-health#:~:text=Exposure%20to%20mercury%20%E2%80%93%20even%20small,%2C%20kidneys%2C%20skin%20and%20eyes (accessed Feb. 24, 2021).

[30]     Missouri Dept. of Nat. Resources, *Mercury Can Affect Human Health*, https://dnr.mo.gov/env/mercury/mercury-impact.htm#:~:text=Mercury%20Can%20Affect%20Human%20Health,and%20developmental%20disorders%20in%20humans.&text=In%20low%20doses%2C%20mercury%20may,with%20fertility%20and%20blood%20pressure\ (accessed Feb. 22, 2021).

[31] Healthy Babies Bright Futures Report, at 14.

[32] Report, at 12-3.

[33] Report, at 32.

and Human Services ("HHS") and the EPA, both consider cadmium and cadmium compounds human carcinogens (can cause cancer).[34]

33.    Children with higher cadmium levels are three times more likely to have learning disabilities and participate in special education, according to a new study led by Harvard University researchers.[35]

34.    The EPA has set a maximum cadmium level in drinking water to 5 ppb, the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb.[36]

---

[34]    NYS    Dept.    of    Health,    *Cadmium    in    Children's    Jewelry*, https://www.health.ny.gov/environmental/chemicals/cadmium/cadmium_jewelry.htm#:~:text=Children%20can%20be%20exposed%20to,to%20cadmium%20in%20children's%20jewelry    (accessed    Feb.    22, 2021).

[35] Marla Cone, *Is Cadmium as Dangerous for Children as Lead?*, SCIENTIFIC AMERICAN (Feb. 10, 2012), https://www.scientificamerican.com/article/is-cadmium-as-dangerous-for-children-lead/    (accessed    Feb. 22, 2021).

[36] Report, at 29.

## SUBSTANTIVE ALLEGATIONS

35.     On November 6, 2019, in response to reports alleging high levels of toxic heavy metals in baby foods, the United States House of Representatives Committee on Oversight and Reform Subcommittee on Economic and Consumer Policy (the "Subcommittee") requested internal documents and test results from several of the United States' largest producers of baby foods, including Defendant Gerber.

36.     On February 4, 2020, the Subcommittee published a report entitled "Baby Foods Are Tainted With Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury" (the "Report") containing the results of the Subcommittee's investigation.

## I.     GERBER KNOWINGLY SOLD BABY FOODS WITH UNSAFE LEVELS OF TOXIC HEAVY METALS TO UNITED STATES CONSUMERS

37.     The Subcommittee's Report contained findings that Gerber knowingly sold baby foods to United States consumers that contained high levels of the toxic heavy metal's arsenic, lead, mercury, and cadmium. By knowingly selling baby foods with unsafe amounts of these toxic heavy metals to United States consumers, Gerber knowingly exposed millions of children to substances proven to cause permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior.[37]

38.     The Report found that Gerber only tested individual ingredients, and not its final product(s). According to the Subcommittee, this policy "recklessly endangers babies and children and prevents [Gerber] from ever knowing the full extent of the danger presented by [Gerber's] products."[38]

---

[37] Report, at 2.

[38] Report, at 56-7.

39.    The Report also made specific findings regarding the presence of toxic heavy metals in baby foods produced by Defendant Gerber. These findings include the following:

- Gerber used high-arsenic ingredients, using 67 batches of rice flour that had tested over 90 ppb inorganic arsenic.[39] Gerber did not provide inorganic arsenic results for all of its ingredients. However, test results for conventional rice flour revealed that Gerber routinely used flour with over 90 ppb inorganic arsenic. Gerber used five batches of rice flour that had 98 ppb inorganic arsenic, and 67 batches that contained more than 90 ppb.[40]

- Gerber used ingredients that tested as high as 48 ppb lead; and used many ingredients containing over 20 ppb lead.[41] Gerber produced limited lead testing results. The results for its sweet potatoes and juices demonstrated its willingness to use ingredients that contained dangerous lead levels. Gerber used an ingredient, conventional sweet potatoes, with 48 ppb lead. Gerber also used twelve other batches of sweet potato that tested over 20 ppb for lead, the EU's lenient upper standard.[42] The average amount of lead in Gerber's tested juice concentrates was 11.2 ppb—more than FDA's limit for lead in bottled water. Over 83% of the juice concentrates tested showed greater than 1 ppb lead, which is Consumer Reports' recommended limit for fruit juices.

- Gerber does not test all its ingredients for cadmium. Of those it does test, it accepts ingredients with high levels of cadmium. Gerber used multiple batches of carrots containing as much as 87 ppb cadmium, and 75% of the carrots Gerber used had more than 5 ppb cadmium—the EPA's drinking water standard.[43]

- Gerber rarely tests for mercury in its baby food. Of the test results they presented to the Subcommittee, they only tested carrots, sweet potatoes, and lemon juice concentrate.[44]

---

[39] Report, at 3.

[40] Report, at 19.

[41] Report, at 3.

[42] Report, at 27.

[43] Report, at 32.

[44] Report, at 4.

## II.    DEFENDANT GERBER FALSELY, MISLEADINGLY, AND/OR DECEPTIVELY CLAIMED ITS FOOD WAS FIT FOR CHILD CONSUMPTION

40.    Baby food manufacturers hold a special position of public trust. Consumers believe that they would not sell unsafe products. Consumers also believe that the federal government would not knowingly permit the sale of unsafe baby food. Defendant Gerber took advantage of its position.

41.    Gerber advertised its products as safe, healthy, nutritious, natural, organic, and safe for consumption. By doing so, Gerber had a duty to ensure that its statements regarding its products were true and not false, misleading, or deceptive, yet continued to make false, misleading, and deceptive statements regarding the safety of its baby foods despite knowledge that its baby foods contained unsafe levels of heavy metals.

42.    Gerber violated this duty by marketing and advertising its baby foods through statements regarding the safety of its baby foods despite knowing that its baby foods contained dangerous levels of heavy metals.

43.    As a result of Gerber's false, misleading, and deceptive statements, Plaintiffs and members of the Class and Subclasses bought Gerber Baby Foods they would not have otherwise bought, and paid more for Gerber Baby Foods than they would have paid had it been fully disclosed that Gerber Baby Foods contained dangerous levels of heavy metals.

## III.    DEFENDANT GERBER FAILED TO WARN UNITED STATES CONSUMERS THAT ITS BABY FOODS CONTAINED DANGEROUS LEVELS OF HEAVY METALS

44.    Gerber knew or should have been aware that a consumer would be feeding its products to children, often making its products the primary source of food for a child. This leads to repeated exposure of the heavy metals to the child.

45.     Gerber thus wrongfully and misleadingly advertised and sold the Gerber Baby Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the baby's body to the point where poisoning, injury, and/or disease can occur. Gerber intentionally omitted these facts from its marketing, advertising and labeling in order to induce and mislead reasonable consumers into purchasing Gerber Baby Foods.

IV.    **PLAINTIFF MILISSA DUCASSE**

46.     Plaintiff Ducasse is a resident of California.

47.     Plaintiff Ducasse purchased several types of Gerber Baby Foods, including baby cereal and purees from December 2020 through February 2021. Plaintiff Ducasse made these purchases at the Safeway supermarket located in Concord, California.

48.     Plaintiff Ducasse would not have made these purchases or would not have paid as much for these products had he known that the Gerber Baby Foods contained dangerous levels of heavy metal toxins.

V.    **PLAINTIF TALLY ROKOCZ**

49.     Plaintiff Rokocz is a resident of Minnesota.

50.     Plaintiff Rokocz purchased several types of Gerber Baby Foods from 2017 through 2019.  Plaintiff Rokocz made these purchases at the Walmart stores in Duluth and Mankato Minnesota.

51.     Plaintiff Rokocz would not have made these purchases or would not have paid as much for these products had he known that the Gerber Baby Foods contained dangerous levels of heavy metal toxins.

## VI.    **PLAINTIFF ALEXIS BRYAN**

52.    Plaintiff Bryan is a resident of Pennsylvania.

53.    Plaintiff Bryan purchased several types of Gerber Baby Foods in 2019 and February of 2021. Plaintiff Bryan made these purchases at the Walmart store in St. Clair Pennsylvania and the Boyer's in Ashland, Pennsylvania.

54.    Plaintiff Bryan would not have made these purchases or would not have paid as much for these products had he known that the Gerber Baby Foods contained dangerous levels of heavy metal toxins.

## **TOLLING AND ESTOPPEL**

## I.    **DISCOVERY RULE TOLLING**

55.    Plaintiffs and the Classes and Subclasses had no way of knowing about Defendant Gerber's conduct with respect to the presence of toxic heavy metals.

56.    Neither Plaintiffs nor any other members of the Class or Subclasses, through the exercise of reasonable diligence, could have discovered the conduct alleged herein. Further, Plaintiffs and members of the Class and Subclasses did not discover and did not know of facts that would have caused a reasonable person to suspect that Gerber was engaged in the conduct alleged herein.

57.    For these, reasons, all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiffs, the Classes, and the Subclasses.

## II.    **FRAUDULENT CONCEALMENT TOLLING**

58.    By failing to provide notice of the presence of toxic heavy metals in the Gerber Baby Foods, Defendant Gerber concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Class and Subclasses.

59.     Upon information and belief, Defendant Gerber intended its acts to conceal the facts and claims from Plaintiffs and members of the Classes and Subclasses. Plaintiffs and the members of the Classes and Subclasses were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant Gerber's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes or Subclasses should be tolled.

## CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

61.     Plaintiffs seek class certification on behalf of a class defined as follows:

**NATIONWIDE CLASS:** all persons in the United States who, from the beginning of any applicable limitations period through the present, purchased the Gerber Baby Foods for household or business use, and not for resale (the "Class").

62.     Plaintiff Ducasse seeks certification on behalf of a California Subclass:

**THE CALIFORNIA SUBCLASS:** all persons who are or were citizens of the State of California who, from the beginning of any applicable limitations period through the present, purchased the Gerber Baby Foods for household or business use, and not for resale (the "California Subclass").

63.     Plaintiff Rokocz seeks certification on behalf of a Minnesota Subclass:

**THE MINNESOTA SUBCLASS:** all persons who are or were citizens of the State of Minnesota who, from the beginning of any applicable limitations period through the present, purchased the Gerber Baby Foods for household or business use, and not for resale (the "Minnesota Subclass").

64.     Plaintiff Bryan seeks certification on behalf of a Pennsylvania Subclass:

**THE PENNSYLVANIA SUBCLASS**: all persons who are or were citizens of the Commonwealth of Pennsylvania who, from the beginning of any applicable limitations period through the present, purchased the Gerber Baby Foods for household or business use, and not for resale (the "Pennsylvania Subclass").

65.    Plaintiffs reserve the right to modify or refine the definitions of the Class or Subclasses based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

66.    Excluded from the Class and Subclasses are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendant and Defendant's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendant's current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendant; and (f) the legal representatives, successors, and assigns of any such excluded persons.

67.    **Ascertainability.** The proposed Classes and Subclasses are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass. Further, the Classes and Subclasses can be readily identified through records maintained by Defendant Gerber.

68.    **Numerosity (Rule 23(a)(1)).** The Classes and Subclasses are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Class and Subclasses, as herein identified and described, is not known, but sales figures indicate that millions of individuals have purchased the Gerber Baby Foods.

69.    **Commonality (Rule 23(a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

- whether Defendant owed a duty of care to Plaintiffs and the Classes;

- whether Defendant knew or should have known that the Gerber Baby Foods contained, or may contain, heavy metals;

- whether Defendant wrongfully represented and continues to represent that the Gerber Baby Foods are natural and safe for human infant consumption;

- whether Defendant wrongfully represented and continues to represent that the Gerber Baby Foods are healthy, superior quality, nutritious and safe for consumption;

- whether Defendant wrongfully represented and continues to represent that the Gerber Baby Foods are natural;

- whether Defendant wrongfully represented and continues to represent that the Gerber Baby Foods appropriate for consumption by various "Stage[s]" of babies;

- whether Defendant wrongfully represented and continues to represent that the manufacturing of the Gerber Baby Foods is subjected to rigorous standards, including testing for heavy metals;

- whether Defendant wrongfully failed to disclose that the Gerber Baby Foods contained, or may contain, heavy metals;

- whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

- whether those representations are likely to deceive a reasonable consumer;

- whether a reasonable consumer would consider the presence, or risk of, heavy metals as a material fact in purchasing baby food;

- whether Defendant had knowledge that those representations were false, deceptive, and misleading;

- whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

- whether a representation that a product is healthy, superior quality, nutritious and safe for consumption and does not contain arsenic, mercury, cadmium, and lead is material to a reasonable consumer;

- whether Defendant's representations and descriptions on the labeling of the Gerber Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

- whether Defendant breached its express warranties;

- whether Defendant breached its implied warranties;

- whether Defendant engaged in unfair trade practices;

- whether Defendant engaged in false advertising;

- whether Defendant's conduct was negligent per se;

- whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

- whether Plaintiffs and the members of the Class are entitled to actual, statutory, and punitive damages; and

- whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief.

70.    **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other members of the proposed Class and Subclasses. Plaintiffs and members of the Class and Subclasses (as applicable) suffered injuries as a result of Defendant Gerber's wrongful conduct that is uniform across the Class and Subclasses.

71.    **Adequacy (Rule 23(a)(4)).** Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class and Subclasses. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class and Subclasses, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclasses.

72.    **Substantial Benefits.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclasses is impracticable. The prosecution of separate actions by individual members of the Class and Subclasses would impose heavy burdens upon the Courts and Defendant, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes and Subclasses, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

73.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

74.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Classes and Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and Subclasses as a whole. Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

# CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## BREACH OF EXPRESS WARRANTY

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

75.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

76.     Defendant Gerber marketed and sold the Gerber Baby Foods into the stream of commerce with the intent that the Gerber Baby Foods would be purchased by Plaintiffs and the Class.

77.     Defendant expressly warranted, advertised, and represented to Plaintiffs and the Class that its Gerber Baby Foods were and are safe, healthy, and appropriate for infant and child consumption.

78.     Defendant made these express warranties regarding the Gerber Baby Foods' quality, ingredients, and fitness for consumption in writing through its website, advertisements, and marketing materials and on the Gerber Baby Foods' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Gerber Baby Foods.

79.     Defendant's advertisements, warranties, and representations were made in connection with the sale of the Gerber Baby Foods to Plaintiffs and the Class. Plaintiffs and the Class relied on Defendant's advertisements, warranties, and representations regarding the Gerber Baby Foods in deciding whether to purchase Defendant's products.

80.     Defendant's Gerber Baby Foods do not conform to Defendant's advertisements, warranties and representations in that they are not safe, healthy, and appropriate for infant and child consumption; and contain, or may contain, levels of various heavy metals.

81.     Defendant therefore breaches the express warranties by placing Gerber Baby Food into the stream of commerce and selling them to consumers, when they have dangerous and/or toxic levels of heavy metals, and can cause toxicity and adverse health implication, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Defendant Gerber. These high levels of heavy metals substantially impair the use, value, safety of Gerber Baby Foods.

82.     Defendant Gerber was at all times aware, or should have been aware, of the toxic or dangerous levels of heavy metals in Gerber Baby Foods. Defendant Gerber was on notice of these concerns with their products, but nowhere on the package labeling or on Defendant Gerber's website or other marketing materials did Defendant Gerber warn Plaintiffs and members of the Class and Subclasses that they were at risk of feeding their children food and/or beverages with toxic or dangerous levels of heavy metals.

83.     Instead, Defendant Gerber concealed the high levels of heavy metals contained in the Gerber Baby Foods and deceptively represented that these products were safe, healthy, and appropriate for infant or child consumption. Defendant Gerber thus utterly failed to ensure that the material representations it was making to consumers were true.

84.     The toxic and/or dangerous levels of heavy metals at issue in the Gerber Baby Foods existed when they left Defendant's possession or control and were sold to Plaintiffs and members of the putative classes. The levels of heavy metals contained in the Gerber Baby Foods were undiscoverable by Plaintiffs and members of the putative classes at the time of purchase of the Gerber Baby Foods.

85.      As manufacturers, marketers, advertisers, distributors and sellers of the Gerber Baby Foods, Defendant Gerber had exclusive knowledge and notice of the fact that the Gerber Baby Foods did not conform to the affirmations of fact and promises.

86.      In addition, or in the alternative, to the formation of an express contract, Defendant made each of the above-described representations to induce Plaintiffs and members of the Class and Subclasses to rely on such representations.

87.      Defendant Gerber's affirmations of fact and promises were material, and Plaintiffs and members of the putative classes reasonably relied upon such representations in purchasing the Gerber Baby Foods.

88.      All conditions precedent to Defendant's liability for its breach of express warranty have been performed by Plaintiffs or members of the Class or Subclasses.

89.      Affording Defendant Gerber an opportunity to cure its breaches of written warranties would be unnecessary and futile here. Defendant Gerber was placed on reasonable notice of the levels of heavy metals in the Gerber Baby Foods and breach of the warranties based on their scientific research and expertise in the food production industry. Defendant Gerber has had ample opportunity to cure the high level of heavy metal in their Gerber Baby Foods to make them safe and healthy for consumption by Plaintiffs and members of the putative classes and their children, but have failed to do so.

90.      Defendant Gerber has also had notice of their breach as set forth herein by virtue of the publication of the Report and the prior 2019 report issued by Healthy Baby Bright Future.

91.      As a direct and proximate result of Defendant Gerber's breaches of express warranty, Plaintiffs and members of the putative classes have been damaged because they did not receive the products as specifically warranted by Defendant Gerber. Plaintiffs and members of the

putative classes did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment of the Gerber Baby Foods.

92.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## SECOND CLAIM FOR RELIEF

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

93.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

94.     Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Class.

95.     There was a sale of goods from Defendant to Plaintiffs and the Class.

96.     At all times mentioned herein, Defendant manufactured or supplied Gerber Baby Foods, and prior to the time the Gerber Baby Foods were purchased by Plaintiffs and the Class, Defendant impliedly warranted to them that the Gerber Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact made on the Gerber Baby Foods' containers and labels, including that the food was natural and safe and appropriate for human infant consumption. Plaintiffs and the Class relied on Defendant's promises and affirmations of fact when they purchased the Gerber Baby Foods.

97.     Contrary to these representations and warranties, the Gerber Baby Foods were not fit for their ordinary use, consumption by babies, and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

98.     Defendant breached its implied warranties by selling Gerber Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

99.     Defendant was on notice of this breach, as it was aware of the heavy metals included, or at risk, in the Gerber Baby Foods, and based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby food products as unhealthy and contaminated.

100.    Privity exists because Defendant impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that Gerber Baby Foods were natural, and suitable for consumption by babies, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

101.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Gerber Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals and/or unnatural or other ingredients.

102.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

**THIRD CLAIM FOR RELIEF**

**FRAUDULENT MISREPRESENTATION**

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

103.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

104.    Defendant falsely represented to Plaintiffs and the Class that the Gerber Baby Foods are "natural," "organic" and safe for consumption by infants and young children.

105.    Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase Gerber Baby Foods.

106.    Defendant knew that their representations about Gerber Baby Foods were false in that Gerber Baby Foods contained, or were at risk of containing, levels of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements. Defendant allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

107.    Plaintiffs and the Class did in fact rely on these misrepresentations and purchased Gerber Baby Foods to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted Gerber Baby Foods, Plaintiffs' and the Class's reliance on Defendant's misrepresentations was justifiable.

108.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Gerber Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

109.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FOURTH CLAIM FOR RELIEF

### FRAUD BY OMISSION

**(on behalf of Nationwide Class or, alternatively, the State Subclasses)**

110.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

111.    Defendant concealed from and failed to disclose to Plaintiffs and the Class that Gerber Baby Foods contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

112.    Defendant was under a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients and suitability of the Gerber Baby Foods because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of Gerber Baby Foods for consumption by babies; and (3) Defendant knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that Gerber Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing Gerber Baby Foods.

113.    The facts concealed or not disclosed by Defendant to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase Gerber Baby Foods.

114.    Plaintiffs and the Class justifiably relied on the Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of Gerber Baby Foods, which is inferior when compared to how Gerber Baby Foods are advertised and represented by Defendant.

115.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Gerber Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

116.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FIFTH CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

117.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

118.    Defendant had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of Gerber Baby Foods.

119.    Defendant breached its duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove Gerber Baby Foods from the marketplace or to take other appropriate remedial action.

120.    Defendant knew or should have known that the ingredients, qualities, and characteristics of the Gerber Baby Foods were not as advertised or suitable for their intended use, consumption by infants, and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that: (1) the Gerber Baby Foods were not

nutritious, superior quality, pure, natural, healthy and safe for consumption because they contained, or had a risk of containing, levels of heavy metals and/or other unnatural ingredients or contaminants that do not conform to the packaging; (3) the Gerber Baby Foods were adulterated, or at risk of being adulterated, by heavy metals; and (4) the Gerber Baby Foods were otherwise not as warranted and represented by Defendant.

121.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Gerber Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

122.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

123.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

124.    Substantial benefits have been conferred on Defendant by Plaintiffs and the Class through the purchase of Gerber Baby Foods. Defendant knowingly and willingly accepted and enjoyed these benefits.

125.    Defendant either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Gerber Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented

and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

126. Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Class.

127. Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

128. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## SEVENTH CLAIM FOR RELIEF

### PENNSYLVANIA UNFAIR TRADE PRACTICES

### AND CONSUMER PROTECTION LAW

### 73 Pa. Cons. Stat. Ann. §§ 201-1 *et seq.*

### (on behalf of Plaintiff Bryan and the Pennsylvania Subclass)

129. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

130. Plaintiff Bryan and Pennsylvania Subclass Members are residents of the Commonwealth of Pennsylvania.

131. At all times mentioned herein, Defendant Gerber engaged in "trade" or "commerce" in Pennsylvania, as defined by 73 Pa. Cons. Stat. Ann. § 201-2(3), in that they advertised, offered for sale, and sold goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold "services", "property", "article[s]", "commodit[ies]" or "thing[s] of value" in Pennsylvania.

132.    Plaintiff Bryan and Pennsylvania Subclass members purchased Gerber Baby Foods "primarily for personal, family or household purposes." 73 Pa. Const. Stat. Ann. § 201-9.2.

133.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTCPL"), 73 Pa. Cons. Stat. Ann. § 201-3 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are hereby declared unlawful."

134.    For the reasons discussed herein, Defendant violated and continues to violate the UTCPL by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by UTCPL §§ 201-1 et seq. Defendant Gerber's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

135.    Defendant Gerber repeatedly advertised, both on the labels for Gerber Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Gerber Baby Foods were and are safe and healthy for infant and child consumption. Defendant Gerber failed to disclose the material information that Gerber Baby Foods contained unsafe levels of toxic heavy metals.

136.    Defendant Gerber's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Gerber Baby Foods without being aware that Gerber Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Bryan and Pennsylvania Subclass Members suffered damages by purchasing Gerber Baby Foods because they would not have purchased Gerber Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

137.    Defendant Gerber's deceptive trade practices caused injury in fact and actual damages to Plaintiff Bryan and Pennsylvania Subclass Members in the form of the loss or diminishment of value of Gerber Baby Foods Plaintiff Bryan and Pennsylvania Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Bryan and Pennsylvania Subclass Members. The injuries Plaintiff Bryan and Pennsylvania Subclass Members were to legally protected interests. The gravity of the harm of Defendant Gerber's actions is significant and there is no corresponding benefit to consumers of such conduct.

138.    Plaintiff Bryan and Pennsylvania Subclass Members seek relief for the injuries they have suffered as a result of Defendant Gerber's unfair and deceptive acts and practices, as provided by 73 Pa. Cons. Stat. Ann. § 201-9.2 and applicable law.

## EIGHTH CLAIM FOR RELIEF

### CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT

### Cal. Civ. Code §§ 1750 *et seq*.

### (on behalf of Plaintiff Ducasse and the California Subclass)

139.    Plaintiffs incorporate the forgoing allegations as if fully set forth herein.

140.    Plaintiffs intend to provide Defendant, via certified mail, return receipt requested, notice of the specific complaint and damages in accordance with Cal. Civ. Code § 1761. Subject to the response, if any, by Defendant within 30 days of the notice, Plaintiffs, on behalf of themselves and the Classes, shall amend the Complaint to include this Claim for Relief and demand all appropriate relief under the CLRA.

141.    Plaintiffs and each proposed Class member are "consumer[s]" as that term is defined in Cal. Civ. Code § 1761(d).

142.    The Gerber Baby Foods are "goods," as that term is defined in Cal. Civ. Code § 1761(a).

143.    Defendant is a "person" as that term is defined in Cal. Civ. Code § 1761(c).

144.    Plaintiffs' and each proposed Class member's purchase of Defendant's products constituted a "transaction" as that term is defined in Cal. Civ. Code § 1761(e).

145.    Defendant's conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

(a)    Cal. Civ. Code § 1770(a)(5), by negligently, recklessly, and/or intentionally representing that Gerber Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption when in fact they contain elevated levels of toxic heavy metals, and by failing to make any mention of heavy metals in Gerber Baby Food;

(b)    Cal. Civ. Code § 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Gerber Baby Foods were of a particular standard, quality, or grade, when they were of another;

(c)    Cal. Civ. Code § 1770(a)(9), by negligently, recklessly, and/or intentionally advertising Gerber Baby Foods with intent not to sell them as advertised; and

(d)    Cal. Civ. Code § 1770(a)(16), by representing that Gerber Baby Foods have been supplied in accordance with previous representations when they have not.

146.    As a direct and proximate result of these violations, Plaintiffs and the Class have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of Gerber Baby Foods.

147.    Plaintiffs and Members of the Class intend to seek relief for the injuries they have suffered as a result of Defendant Gerber's practices, as provided by the CLRA and applicable law.

## NINTH CLAIM FOR RELIEF

### CALIFORNIA'S FALSE ADVERTISING LAW

### Cal. Bus. & Prof. Code §§ 17500 *et seq*.

### (on behalf of Plaintiff Ducasse and the California Subclass)

148.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

149.    California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

150.    As set forth herein, Defendant's claims that Gerber Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption are literally false, due to their unsafe levels of toxic heavy metals, and likely to deceive the public.

151.    Defendant's claims that Gerber Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption are untrue or misleading, as is failing to mention the presence of toxic heavy metals in Gerber Baby Foods.

152.    Defendant knew, or reasonably should have known, that all these claims were untrue or misleading.

153.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these products in the future if she can be assured that Gerber Baby Foods are as advertised: healthy, nutritious, made from the best ingredients, and safe for consumption, and do not contain elevated levels of toxic heavy metals.

154.    Plaintiffs and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on Gerber Baby Foods.

155.    Plaintiffs do not have adequate remedies at law for defendant's conduct, which remains ongoing.

**TENTH CLAIM FOR RELIEF**

**CALIFORNIA'S UNFAIR COMPETITION LAW**

**Cal. Bus. & Prof. Code §§ 17200 *et seq*.**

**(on behalf of Plaintiff Ducasse and the California Subclass)**

156.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

157.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

158.    Defendant Gerber fraudulently represented that Gerber Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption are literally false due to their elevated levels of toxic heavy metals and are likely to deceive the public, as is Defendant's failing to make any mention of heavy metals in the Gerber Foods.

159.    As alleged herein, Defendant Gerber unlawfully advertised Gerber Baby Foods using false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws:

(a) The CLRA, Cal. Bus. & Prof. Code § 1750 *et seq*.; and

(b) The False Advertising Law, California Business & Professions Code §§ 17500, *et seq*.

160.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Gerber Baby Foods is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

161.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of Gerber Baby Foods is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

162.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of Gerber Baby Foods is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

163.    In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

164.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

165.    On behalf of herself and the Class, Plaintiffs also seek an order for the restitution of all monies from the sale of Gerber Baby Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

166.    Plaintiffs do not have adequate remedies at law for Defendant's conduct, which remains ongoing.

## ELEVENTH CLAIM FOR RELIEF

### MINNESOTA'S UNLAWFUL TRADE PRACTICES ACT

### Minn. Stat. Ann. § 325D13, *et seq.*

#### (on behalf of Plaintiff Rokocz and the Minnesota Subclass)

167.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

168.    Defendant is a "person" within the meaning of the Minnesota Unlawful Trade Practices ACT (MUTPA).

169.     Defendant violated the MUTPA by knowingly misrepresenting the true quality and ingredients of the Baby Foods by falsely claiming that the Baby Foods are:

(a) Natural;

(b) Appropriate for certain "Stage[s]" of babies; and

(c) "real food for babies."

170.    Defendant knew or should have known that the Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing heavy metals, perchlorate, and/or unnatural or other ingredients.

171.    Defendant's pattern of knowing misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff Rokocz and the Minnesota Sub-Class with respect to the Baby Foods' quality, ingredients, and suitability for consumption by babies.

172.    Defendant intended that Plaintiff Rokocz and the Minnesota Sub-Class would rely on Defendant's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Baby Foods' quality, ingredients, and suitability for consumption by babies.

173.    Defendant's conduct and omissions described herein occurred repeatedly

in Defendants' trade or business and were capable of deceiving a substantial portion of the consuming public.

174. The facts concealed or not disclosed by Defendant were material facts in that Plaintiff Rokocz and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods. Had Plaintiff known the Baby Foods did not have the quality advertised by Defendant, she would not have purchased the Baby Foods.

175. Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this fraudulent course of conduct.

176. Plaintiff Rokocz and the members of the Minnesota Sub-Class would not have purchased the Baby Food at all had they known of the presence or risk of heavy metals and/or any other ingredients or contaminants that do not conform to the packaging claims.

177. Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.15, Plaintiff Rokocz and the Minnesota Sub-Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the MUTPA.

## TWELTH CLAIM FOR RELIEF

### Minnesota's Uniform Deceptive Trade Practices Act

### Minn. Stat. § 325D.44, *et seq.*

### (on behalf of Plaintiff Rokocz and the Minnesota Sub-Class)

178. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

179. Defendant is a "person" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act (MUDTPA).

180. Defendant willingly engaged in deceptive trade practices, in violation of the

MUDTPA, by knowingly misrepresenting the true quality of the Baby Foods by falsely claiming that the Baby Foods are:

(a) Natural; "[N]atural and organic products that are free from artificial preservatives, colors and flavors;"

(b) Appropriate for certain "Stage[s]" of babies; and

(c) "real food for babies"

181.    Defendant knew or should have known that the Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing, heavy metals and/or any other ingredients or contaminants that do not conform to the packaging claims.

182.    Defendant's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff Rokocz and the Minnesota Sub-Class with respect to the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by babies.

183.    Defendant intended that Plaintiff Rokocz and the Minnesota Sub-Class would rely on Defendant's misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by babies.

184.    Defendant's conduct and omissions described herein occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

185.    The facts concealed or not disclosed by Defendant were material facts in that Plaintiff Rokocz and any reasonable consumer would have considered them in deciding

whether to purchase the Baby Foods.  Had Plaintiff Rockocz known the Baby Foods did not have the quality advertised by Defendant, she would not have purchased the Baby Foods.

186.    Defendant intended that Plaintiff Rokocz and the Class would rely on the deception by purchasing the Baby Foods, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

187.    Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this fraudulent course of conduct.

188.    As a direct and proximate result of Defendant's conduct, Plaintiff Rokocz and the Minnesota Sub-Class have suffered actual damages in that they purchased the Baby Food that was worth less than the price they paid.

189.    Plaintiff Rocokz and the members of the Minnesota Sub-Class would not have purchased the Baby Foods at all had they known of the presence of these heavy metals, perchlorate, and/or unnatural or other ingredients that do not conform to the packaging.

190.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.45, Plaintiff Rokocz and the Minnesota Sub-Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MUDTPA.

## THIRTEENTH CLAIM FOR RELIEF

**Minnesota False Statement in Advertising Act**

**Minn. Stat. § 325F.67, *et seq.***

**(on behalf of Plaintiff Rokocz and the Minnesota Sub-Class)**

191.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

192.    Plaintiff Rokocz purchased "goods," specifically the Baby Foods discussed herein, and is a "person" within the meaning of the False Statement in Advertising Act (FSAA).

193.    Plaintiff Rokocz purchased the Baby Foods through Defendant's statements on the packaging that contained numerous material assertions representations, and statements of fact made, published, disseminated, circulated, and placed before the public by Defendant that were untrue, deceptive, and misleading.

194.    By engaging in the conduct herein, Defendant violated and continues to violate Minn. Stat. § 325F.67.

195.    Defendant's misrepresentations, knowing omissions, and use of other sharp business practices include, by way of example, representations that the Baby Foods are:

        (a) Natural;

        (b) Appropriate for certain "Stage[s]" of babies;

        (c) "real food for babies"

196.    Defendant knew or should have known that the Baby Foods did not have the quality and ingredients described above because they contained, and/or had a material risk of containing, heavy metals and/or any other ingredients or contaminants that do not conform to the packaging claims.

197.    Defendant's misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff Rokocz and the Minnesota Sub-Class with respect to the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by babies.

198.    Defendant's conduct and omissions described herein occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

199.    The facts concealed or not disclosed by Defendant were material facts in that Plaintiff Rokocz and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods.  Had Plaintiff Rokocz known the Baby Foods did not have the quality advertised by Defendant, she would not have purchased the Baby Foods.

200.    Defendant intended that Plaintiff Rokocz and the Minnesota Sub-Class would rely on the deception by purchasing the Baby Foods, unaware of the undisclosed material facts.  This conduct constitutes consumer fraud.

201.    Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this fraudulent course of conduct.

202.    As a direct and proximate result of Defendant's conduct, Plaintiff Rokocz and the Minnesota Sub-Class have suffered actual damages in that they purchased the Baby Foods that was worth less than the price they paid.

203.    Plaintiff Rokocz and the members of the Minnesota Sub-Class would not have purchased the Baby Foods at all had they known of the presence of these non-conforming ingredients, contaminants, and/or unnatural or other ingredients.

204.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.67, Plaintiff

Rokocz and the Minnesota Sub-Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the FSAA.

### FOURTEENTH CLAIM FOR RELIEF

**Minnesota Prevention of Consumer Fraud Act**

**Minn. Stat. § 325F.69,** *et seq.*

**(on behalf of Plaintiff Rokocz and the Minnesota Sub-Class)**

205.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

206.    Plaintiff Rokocz is a resident of the State of Minnesota.

207.    Defendant is a "person" within the meaning of the Minnesota Prevention of Consumer Fraud Act (MPCFA).

208.    Defendant's representations with respect to the Baby Foods were made in connection with the sale of the Baby Foods to Plaintiff Rokocz and the Minnesota Sub-Class.

209.    Defendant knowingly acted, used, and employed fraud, false pretenses, false promises, misrepresentations, misleading statements, and deceptive practices in connection with the sale of its Baby Foods. Specifically, Defendant falsely represented that its Baby Foods are:

(a) Natural;

(b) Appropriate for certain "Stage[s]" of babies;

(c) "real food for babies"

210.    Defendant knew or should have known that the Baby Foods did not have the quality described above because they contained, and/or had a material risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the packaging claims.

211.    Defendant intended for Plaintiff Rokocz and the Minnesota Sub-Class to rely on and accept as true these representations in deciding whether to purchase the Baby Foods.

212.    Defendant's unfair or deceptive acts or practices were likely to deceive reasonable consumers about the Baby Foods' quality, ingredients, fitness for consumption and, by extension, the true value of the Baby Foods. Plaintiff Rokocz and the Minnesota Sub-Class relied on, and were in fact deceived by, Defendant's representations and omissions respect to the Baby Foods' quality, ingredients, and fitness for consumption in deciding to purchase them over competitors' baby foods.

213.    Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this fraudulent course of conduct.

214.    As a direct and proximate result of Defendant's conduct, Plaintiff Rokocz and the Minnesota Sub-Class have suffered actual damages in that they purchased the Baby Foods that were worth less than the price they paid.

215.    Plaintiff Rokocz and the members of the Minneosta Sub-Class would not have purchased the Baby Foods at all had they known of the presence of these non-conforming ingredients, contaminants, and/or unnatural or other ingredients.

216.    Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.69, Plaintiff Rokocz and the Minnesota Sub-Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's violations of the MPCFA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class and Subclasses, and requiring Defendant to bear the costs of class notice;

B.    An order enjoining Defendant from selling the Gerber Baby Foods until the levels of heavy metals are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

C.    An order enjoining Defendant from selling the Gerber Baby Foods in any manner suggesting or implying that they are healthy, natural, and safe for consumption;

D.    An order requiring Defendant to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.    An order requiring Defendant to engage in testing of its finished products to measure the levels of heavy metals; and

F.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

DATED: April 19, 2021                    Respectfully submitted,

*/s/* Brian A. Richardson
Brian A. Richardson, Esq. (VSB No. 68582)
Justin W. Ward, Esq. (VSB No. 48893)
Ford Richardson P.C.
901 E. Byrd Street, Suite 1800
Richmond, VA 23219
(804) 220-6113 – Telephone
(804) 482-4898 - Facsimile

Steven L. Bloch
Ian W. Sloss
Zachary Rynar
**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
sbloch@sgtlaw.com
isloss@sgtlaw.com
zrynar@sgtlaw.com

Joseph P. Guglielmo
Erin G. Comite
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

Innessa M. Huot
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Tel:    (212) 983-9330
Fax:    (212) 983-9331
ihuot@faruqilaw.com
*Attorneys for Plaintiffs*